NicholsoN, C. J.,
delivered the opinion of the Court.
On the 2nd of April, 1860, James H. Wakefield bought a slave at a sale made by the Clerk and Master, in the case of Wiseman, Ex’r, v. McEIroy’s heirs, and executed his note therefor, with C. H. Bean, and J. M. Wiseman as his sureties, for $1,300. The note not being paid at maturity, the Clerk and Master moved for and obtained judgment oh said note, for the balance due thereon, against all the parties. This judgment was informal and irregular, but not void. In December, 1861, on the application of J. M. Wiseman, the Clerk' and Master issued two executions on this judgment — one to Coffee county, where Wakefield lived, and the other to Franklin county, where Bean and Wiseman lived. The *392 issuance of two executions was irregular, but that is not a material error in this case. On the execution issued to Franklin county, the Sheriff made about $650, leaving about $670 uncollected. The execution sent to Coffee county was never returned to the Clerk’s office in 'Winchester. In December, 1865, an alias execution was issued to the Sheriff of Franklin, against Bean and Wiseman, for the unpaid balance of the judgment. As the execution sent to Coffee had not been returned or accounted for, the issuance of an alias was irregular, but it is a matter • of no consequence in the decision of the cause.
Upon the issuance of the alias, Bean and Wiseman filed their injunction bill, in which they allege that the Sheriff of Coffee county collected from Wakefield, the principal in the judgment, the full amount due thereon; and, therefore, that they were no longer liable.
To this bill, C. M. Wiseman, executor, and the heirs of McElroy, filed their answer, stating that the balance of the judgment was unpaid; but as they were uncertain who was responsible, whether the makers of the note, Wakefield, Bean and Wiseman, or the Sheriff of Coffee county, B. Ward, and his securities, they obtained leave and filed a bill of inter pleader, making them all parties, and requiring them to inter plead and settle the question of liability.
Bean and Wiseman answer, insisting that the execution sent to Coffee county was levied by Arnold, a deputy of Ward, the Sheriff, ancl that it was levied on the same slave, as the property of Wakefield, for which the original note was given; and that she was sold for $901, in *393 cash, more than sufficient to satisfy the balance of the execution.
"Ward, the Sheriff of Coffee county, and his securities, answer, and deny that Arnold was a deputy of Ward, or 'that he levied and sold under any authority from him; but that he was acting as the agent of J. M. Wiseman in selling the slave. They, therefore, deny their liability for the acts of Arnold. They also insist on the statute of limitations of three years.
Tue statute of limitations can not avail Ward, the Sheriff. By the Code, 2776, actions against Sheriffs on their bonds are not barred until ten years after the cause of action accrued. Nor can the statute of three years avail the securities, because, by § 2774, the time when the statute commences to run; is, when the Sheriff has made return of the execution on which the money was collected. As the execution in this case has never been returned, the statute of limitations of three years does not apply.
The real question in the case is purely one of fact; and this, is whether the execution sent to Coffee county was collected by Arnold, as a deputy of Ward, the Sheriff, or as the agent of J. M. Wiseman, one of parties to the execution.
We can derive no assistance, in the settlement of this question, from the testimony of Arnold, as he is shown to be dead. His declarations, however, are proven by both parties; and, by one side, it is shown that he professed to be acting under the authority and directions of Wiseman, and, by the other,- that he professed to be a *394 regularly appointed deputy of Sheriff Ward. It is proven by Wiseman, that he got the execution from the Clerk and Master, and took it to Tullahoma, to deliver it to Ward; but not finding him, he employed Arnold to take it to him, and directed him to levy it without delay. There is no proof whether Arnold went to see Ward or not, but it is shown that he went in haste to Wake-field’s, took possession of the slave, carried her to Tulla-homa, and there sold her.at public sale, proclaiming that he was selling her as a deputy Sheriff, when she was bid off by Parks at $901. Arnold received the money, and executed his receipt therefor, signing his name as H. S.
Not long after the sale, Parks and the Sheriff, Ward, were together, when the 'subject of the purchase of the negro by Parks, was mentioned. Ward remarked that he must go and get that money from Arnold, as he was bound for it. At another time, Ward was at Wakefield’s, with a claim on him for about $40. Wakefield told him he could not pay it, unless he would let him have that amount out of the money for which his negro had sold. Ward agreed to let him have the money, if Wakefield would give him a receipt. Wakefield agreed to it, whereupon paper was got and some writing done, but witness did not read the paper written.
It is' also in proof, that Hickerson had a claim of about $150 on Wakefield, and that Ward agreed also to pay that claim out of money for which the negro was sold. Hickerson proves that Ward afterwards paid him the $150 for Wakefield, and witness understood from *395 Ward that be was paying it out of the money for which the negro was sold.
These several distinct recognitions of his liability for the act of Arnold, are attempted to be rebutted by the contradictory declarations of Arnold, and other circumstances, which are wholly insufficient to relieve Ward of his responsibility for the acts of Arnold.
The decree of the Chancellor will be reversed, and a decree rendered here in favor of complainants in the bill of inter-pleader against Ward and his securities, for the balance due on the execution, with interest, and the costs of this court and the court below.